UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.08-21489-JORDAN/TURNOFF

JESUS PEDROSO ZUNI

    Plaintiff,

v.

MICHAEL J. ASTRUE
Commissioner of Social Security

    Defendant,

_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before this Court upon Defendant Michael J. Atrue's (hereinafter "Defendant") Motion for Summary Judgment **[D.E. 19]**, Plaintiff Jesus Pedroso Zuni's (hereinafter "Plaintiff") Motion for Summary Judgment **[D.E. 20]**, and Administrative Order 2008-45 which reassigned this matter to the undersigned. **[D.E. 11]**. The issue before the Court is whether the record contains substantial evidence to support the denial of benefits to Plaintiff.

### I. FACTS

Plaintiff was born in 1948 in Cuba, has a sixth grade education, and has worked in the United States as a delivery driver, forklift operator, and a gas station attendant since 1964. (R.22, 245). He claims that he became disabled on July 24, 2004 due to arthritis in his hands and knees, diabetes, and swelling of his hands, knees, and ankles. (R . 239, 253). Plaintiff filed his application for disability benefits under Title II of the Social Security Act in August 2004. (R. 229).

Plaintiff was admitted to Jackson Memorial Hospital on July 29, 2004. (R. 15, 532). A physical examination revealed swelling in the right hand and wrist, and mild edema in the right knee. (R. 145).

An orthopedic consultation showed that Plaintiff had full range of motion in the right shoulder and elbow, and intact sensory examination.( R. 141) A subsequent physical examination showed normal mobility and neurological findings. X-rays were taken of Plaintiff's right shoulder, right knee, and lumbar spine on July 29, 2004. ( R. 520, 549, 558-59). The lumbar spine X-ray was positive for atheromatous changes and multi-level osteophytes consistent with a degenerative disc disease. The rest of the x-rays were normal. Id.

X-ray of the wrist[1] taken at Jackson Memorial Hospital in September 2004 revealed mild osteopenia.[2] ( R. 488). Later, in November 2004, Marie Adam M.D. conducted a consultative exam and diagnosed Plaintiff with hypertension, diabetes, septic arthritis, and right hand, wrist, and knee pain. ( R . 415-19). The examination showed 4/5 right hand grip, 4/5 right leg strength, and some reduced range of motion in the right knee, wrist, and hand. ( R . 417, 420-22). The physical examination was positive for 20/30 pinhole vision in the right eye and 20/40 vision in the left eye. Plaintiff reported to Dr. Adam that he was able to drive a car, sit for two hours, stand for fifteen minutes, walk one mile and was able to shop for groceries and do laundry. ( R . 423). Progress notes in November 2004 indicated that Plaintiff's hypertension and arthritis were "well controlled." Plaintiff complained of foot pain, diminished protective threshold, and elongated/thickened toenails during an April 2005 physical examination. He was diagnosed with diabetes mellitus with neuropathy and onychomycosis. (R . 455).

An MRI of the right hand performed in May 2005 resulted in a finding significant for "inflammatory arthritis, particularly rheumatoid arthritis." ( R. 483, 458). In June 2005, Dr. Adam

---

[1] Physicians initially suspected that Plaintiff was suffering from gonococcal ("G.C.") arthritis; the diagnosis was confirmed by Dr. Catherine J. Willis. Plaintiff was subsequently treated for same. (R. 72, 93, 105, 114, 143).

[2] A condition where bone mineral density is lower than normal.

reevaluated Plaintiff and confirmed the diabetes mellitus diagnosis, as well as multiple joint pains/possible arthritis; she also noted a history of hypertension. ( R . 407-11). A second physical evaluation in June 2005 resulted in a finding of 4/5 right hand grip strength, 4/5 right leg strength, and limited range of motion in the right knee, wrist, and hand. (R. 409, 412-14). Plaintiff reported to Dr. Adam that he could shop for groceries, prepare his meals, drive a car, sit one hour, stand for fifteen minutes, and walk approximately 1,000 feet. ( R. 408-10).

Plaintiff underwent an electrocardiogram (EKG) in July 2006; the EKG was abnormal showing anterolateral ischemia. ( R . 332, 229-41). August 2006 X-rays taken of the cervical spine and shoulders were normal. ( R . 39-40, 324, 326). X-rays of the right knee showed slight degenerative changes. (R. 327). Plaintiff appeared depressed during a physical examination in September 2006; he also presented with tenderness in the right foot and edema. ( R . 318-19).

In July 2007, Plaintiff sought emergency treatment for anxiety and hallucinations of his recently deceased brother. ( R. 19). An examination revealed hypertension, anxiety, headaches, angry mood swings, and an elevated blood glucose level. (R. 277-8). Plaintiff was diagnosed with hypertension and uncontrolled diabetes mellitus. Id.

A hearing was held before an Administrative Law Judge ("ALJ") in September 2007. Plaintiff testified that he was 59 years old, living with his wife and one of their adult children. ( R . 155-56). Plaintiff stated that he stopped working in 2004 due to the onset of his arthritis and diabetes. ( R. 156, 165). As to his ability to function, Plaintiff testified that he could sit for 20-30 minutes at a time, stand for at least an hour, walk for a distance less than a block, and lift no more than ten (10) to twelve (12) pounds. ( R.. 158-59). Plaintiff testified as to his previous work experience as a truck driver, fork lift operator, and gas station attendant. ( R. 156).

He also testified that since the onset of his diabetes and arthritis his daily routine is as follows: get up around 6:30 am, have a cigarette in the kitchen and sit, eat breakfast, drive his granddaughters to school, come home and lay on the couch watching TV until his granddaughters need to be picked up from school. He then eats dinner and goes to bed. ( R . 159-60, 162). Plaintiff is currently taking nine (9) medications which often result in drowsiness and cause him to nap during the day. ( R . 157-58). He does not perform any household chores because he cannot bend his knees or at the waist due to pain and instability. ( R . 162). He only leaves the house to take his granddaughters to school and to take his wife to the grocery store. ( R . 163). Plaintiff cites his diabetes and arthritis as the cause of his loss of strength and ability to work. ( R . 156, 165). He also states that he experiences hypertensive episodes with dizziness, fever, and blurry vision which are symptomatic of the medication. ( R . 164).

## II. LEGAL ANALYSIS

### A. Standard of Review

The factual findings of an ALJ in disability cases are subject to a very limited judicial review to determine whether the record contains substantial evidence to support the findings and whether the correct legal standard was applied. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir.1990). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

When reviewing for substantial evidence, a district court must consider the record in its entirety and take into account evidence favorable and unfavorable to the Commissioner's decision. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995); Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988). The

court need not determine whether it would have reached a different result based upon the record. See Barnes v. Sullivan, 932 F.2d 1356, 1358; Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982). In other words, the court may not re-weigh the evidence or substitute its judgment for that of the ALJ. Id.

This standard of review is applicable only to findings of fact. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reversal is mandated if the Commissioner fails to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted. Cornelius v. Sullivan, 936 F.2d 1143, 1145-46 (11th Cir. 1991); See also Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

The Social Security Administration requires that the ALJ go through a five step analysis before making a determination. See 20 C.F.R. § 404.1520; 20 C.F.R. §416.920 (a)-(f). The first step requires the ALJ to determine whether the claimant is employed (i.e., engaged in substantial gainful activity). If the claimant is engaged in a form of substantial gainful activity, he or she will not be found to be disabled regardless of the severity of impairments. See 20 C.F.R. §0404.1520(b). See also ( R . 14). In the event that claimant is not engaged in substantial gainful activity, the inquiry proceeds to step two. Id. The second step requires the ALJ to evaluate whether the claimant suffers from a severe impairment or a combination of impairments. If the judge does not find that the claimant suffers from a single severe impairment or a combination of impairments, then a non-disability finding results and the case terminates. ( R . at 14).

At the third step, the ALJ must compare the claimant's impairments with those listed in the Code of Federal Regulations. See 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. Some impairments are so severe, either alone or in combination with others, that if the claimant establishes

such impairments, disability will be presumed and benefits awarded without further inquiry. See Gibson v. Heckler, 762 F.2d 1516, 1518, n. 1 (11th Cir. 1985); see also 20 C.F.R. §404.1520(d).

Before proceeding to step four, the ALJ must determine the claimant's residual functional capacity (hereinafter "RFC").[3] See 20 C.F.R. §404.1520(e). In evaluating the claimant's RFC, the ALJ should look to his or her ability to do physical or mental work activities on a sustained basis despite limitations from his impairments. All impairments–severe or otherwise–should be considered in this analysis. See 20 C.F.R.§§404.1520(e) and 404.1545; SSR 96-8p.

At step four, the ALJ determines whether the claimant's impairments prevent him or her from performing past relevant work. If the answer is in the negative, then disability is established and benefits are granted. In the alternative, if it is found that past relevant work can still be performed, the burden then shifts to the Commissioner to show, at step five, that there is other work available in the job market which the claimant can perform. Id. §§404.1520(f) and 416.920(f).

### B. Plaintiff's Arguments for Reversal

Plaintiff's claim for disability was reviewed by an ALJ who made the following findings: (1) Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2007, (2) Plaintiff has not engaged in substantial gainful activity since July 29, 2004, (3) Plaintiff has a number of impairments stemming from diabetes mellitus and arthritis, (4) such impairments do not meet or medically equal one of the listed severe impairments, (5) Plaintiff has the RFC to perform the full range of medium level work, (6) Plaintiff is capable of performing his past relevant work as a delivery driver. In the determination, the ALJ found that Plaintiff's testimony as to the intensity, persistence and limiting effect of his impairments and the symptoms of his medications was not credible in light of the record.

---

[3] An "RFC assessment is a function-by-function assessment based upon all relevant evidence of an individual's ability to do work-related activities."

( R . 19-21). Based on these findings, the ALJ denied Plaintiff's request for disability status.

Plaintiff makes three arguments for reversal of the ALJ's ruling.

### 1. Improper RFC Assessment

Plaintiff argues that the ALJ did not perform a proper RFC assessment. **[D.E. 20].** In this regard, Plaintiff raises three sub-issues. First, Plaintiff argues that the ALJ did not follow Social Security Ruling (SSR) 96-8p which requires a "function-by-function" analysis of all of his work related abilities. Upon careful review, the undersigned finds that the ALJ conducted a detailed review of Plaintiff's impairments. ( R . 15-17).

To illustrate, the ALJ considered Plaintiff's ability to sit, stand, walk, lift, carry, push and pull–all of which are listed in the record and noted in the decision. Id. Further, while Social Security Ruling 96-8p does require a function-by-function analysis, it does not mandate any specific format. Therefore, the ALJ's analysis, though not itemized, provides sufficient review of Plaintiff's impairments and is supported by substantial evidence.

Most importantly, considering the enormity of the Social Security Administration as an adjudicative agency, "the need for efficiency is self-evident." Barnhart v. Thomas, 540 U.S. 20, 28 (2003). In other words, where there are thousands of cases that must be reviewed and decided, efficiency is key. Here, the ALJ was "fair" in that he relied upon a detailed review of the record and "efficient" by leaving out unnecessary repetitive discussion of each function in favor of a single narrative analysis. ( R . 15-17). Consistent with the above and the foregoing, the undersigned finds that substantial evidence supports the RFC evaluation, and therefore no clear error was committed by the ALJ.

Secondly, Plaintiff disputes the RFC evaluation, because state agency physicians were relied upon instead of Plaintiff's treating physicians. Plaintiff specifically argues that the Commissioner should

have taken steps to have the examining physician testify as part of the fifth step of the inquiry. See **[D.E. 20 at 14-15]**. These proceedings, however, never reached the fifth step, because Plaintiff did not meet his burden of proving that he was not capable of performing his past relevant work (fourth step). In other words, the burden never shifted back to the Commissioner (step five). Accordingly, the testimony of an examining physician (as opposed to a state agency physician) was not necessary.

Third, Plaintiff claims that the ALJ was required to "develop" the physical requirements of his past work in conducting the RFC evaluation. Plaintiff cites Nelms v. Bowen for the proposition that an ALJ cannot assess a claimant's RFC to perform past work without first developing evidence of the physical requirements of the work. Nelms v. Bowen, 803 F.2d 1164, 1165 (11th Cir. 1986). However, here the ALJ concluded that the record contained sufficient testimony regarding the physical demands of previous jobs. (R. 19-20).

For example, Plaintiff testified that as a truck driver he had to carry between 20 and 40 pounds of various types of auto equipment. (R. 165-66). Based on the evaluation of Plaintiff's RFC, the ALJ found that Plaintiff could perform "medium work" which is defined by lifting and/or carrying 50 pounds occasionally, lifting and/or carrying 25 pounds frequently, pushing or pulling similar amounts, sit, stand, and/or walk for six hours out of an eight hour day. (R. 18). Upon review of the Dictionary of Occupational Titles (categorizing truck driving as a position requiring medium work) and Plaintiff's testimony as to the physical demands of his past relevant work, the ALJ concluded that Plaintiff could indeed perform his previous job as a truck driver. (R. 19). Based on the record it cannot be said that the ALJ committed clear error in finding substantial evidence to support the RFC evaluation.

### 2. Failure to Obtain Vocational Expert Testimony

Plaintiff argues that testimony from a vocational expert is needed in order to establish

available alternative work opportunities in the job market for disability plaintiffs and that the ALJ erred by failing to include same. This argument fails because obtaining such testimony falls under the fifth step of the analysis. Again, because the ALJ ended his analysis at step four, acquiring testimony from a vocational expert was unnecessary. Holley v. Chater, 931 F. Supp. 840, 851, (S.D. Fla. 1996)l, Sanchez v. Astrue, 2008 WL 4467812 *10 (S.D. Fla. 2008); see also Barnes v. Sullivan, 932 F. 2d 1356, 1359 (11th Cir. 1986), Hennes v. Comm'r. of Soc. Sec. Admin., 130 Fed. Appx. 343, 346 (11th Cir. 2005).

Upon careful review of the record, the testimony, the objective and opinion medical evidence, and Plaintiff's daily activities, the ALJ concluded that Plaintiff's injuries did not render him unable to work. In reaching this decision, the ALJ considered Plaintiff's arthritis, diabetes mellitus, hypertension, and treatment regarding same. (R. 15-17). The ALJ also considered Plaintiff's limited daily activities and intake of medication. (R. 20). The ALJ pointed to various parts of the record that showed that Plaintiff's condition improved, e.g., X-Rays, MRIs, and EKGs that were taken to monitor his status. Id. Further, the ALJ found that none of Plaintiff's treating physicians instructed him to refrain from doing work related activity. Id. In sum, the ALJ found that despite his symptoms Plaintiff retains a number of functional capacities.

Finally, the ALJ also considered Plaintiff's medications and the effects of same. In so doing, the ALJ noted that none of the medications cause hallucinations or mind altering effects that would render him incapable of performing work. (R. 20).

In short, Plaintiff had the burden of proving that he could not perform previous relevant work. Only then would the burden have shifted to the Commissioner, who would then need to prove that alternative jobs exist. As noted above, Plaintiff failed to meet his burden. Accordingly, the ALJ's

9

finding that Plaintiff could perform "medium" work is consistent with the record.

### 3. Misapplication of the Pain Standard and Side Effects of Medication

Plaintiff argues that the ALJ misapplied the "pain standard." Plaintiff supports this claim by stating that his medical regimen, daily activities, medication side-effects were not properly reviewed. In <u>Foote v. Charter</u>, the Eleventh Circuit established a three part pain standard analysis which requires: (1) evidence of an underlying medical condition, and either (2) objective medical evidence confirming the severity of the alleged pain arising from that condition or (3) a finding that the objectively determined medical condition is of such a severity that it can reasonably be expected to cause the alleged pain. <u>Foote v. Charter</u>, 67 F. 3d 1553, 1560 (11th Cir. 1995); <u>Holt v. Sullivan</u>, 921 F. 2d 1221, 1223 (11th Cir. 1991). In light of <u>Foote</u>, Plaintiff argues that the ALJ focused solely on Plaintiff's medical regimen and daily activities, and improperly discredited his pain testimony. <u>See</u> **[D.E. 20 at 30-32]**.

Plaintiff's argument is contrary to the record evidence. Here, the ALJ meticulously surveyed the entire record, including, among other things, sworn testimony, objective and opinion medical evidence, his daily activities, his prescribed medications, and their effectiveness, and concluded that the allegations as to Plaintiff's pain were not credible.

For example, the ALJ found inconsistencies between the level of pain that Plaintiff alleged in testimony and the rest of the record including the medical reports, the prescribed medications, and Plaintiff's daily activities. Specifically, Plaintiff complained of severe pain in his arms and legs due to arthritis, and yet still takes his granddaughters to school and testified that he was capable of getting groceries and attending to his own personal care. (R.19). Further, medical evidence shows that he has been prescribed medication that has been successful in mediating the pain. ( R . 16-18). Moreover,

10

all recent test results have been normal indicating that any previous irregularity has been treated successfully. (R. 18-19). Defendant correctly notes that "a medical condition that can be reasonably remedied either by surgery, treatment, or medication is not disabling." See Dawkins v. Bowen, 848 F.2d 1211 (11th Cir. 1998).

Further, the ALJ is also allowed to consider daily activities when evaluating subjective complaints as to disabling pain. See Marcia v. Bowen, 829 F. 2d 1009, 1012 (11th Cir. 1987). Since the inquiry is whether the Plaintiff's allegations regarding pain were credible to the extent that the pain and limitations alleged prevented him from performing substantial gainful activity, the ALJ accurately reviewed the complete record, noted the inconsistencies, and ruled that his allegations were not credible. (R. 20). In light of the foregoing and this court's limited review, the undersigned finds no clear error by the ALJ.

Lastly, Plaintiff argues that the ALJ ignored testimony regarding the side-effects of his medication. In support of this argument, Plaintiff lists a myriad of possible symptoms that can be attributed to his current medications. The ALJ reviewed the record in full, and specifically noted that Plaintiff is currently taking nine different medications to control his medical condition. (R. 20). Despite the opinions of physicians as to other respects of Plaintiff's condition, there is no indication by any physician of record that suggests that any of the medications prevent him from working. The record only shows that Plaintiff experiences dizziness, fever, and blurry vision symptomatic of the medication. (R. 164). These symptoms are not severe enough to preclude Plaintiff from working. Accordingly, it cannot be stated that the ALJ's finding was clearly erroneous; on the contrary there is substantial evidence supporting the decision.

## III. CONCLUSION AND RECOMMENDATION

Upon review of the record below and the applicable law, the undersigned finds that the ALJ's decision was supported by substantial evidence and that the correct legal standard was applied. It is therefore **RESPECTFULLY RECOMMENDED** that: (1) the ALJ's decision be **AFFIRMED**, (2) Defendant's Motion for Summary Judgment **[D.E. 19]** be **GRANTED**, and (3) Plaintiff's Motion for Summary Judgment **[D.E. 20]** be **DENIED**.

Pursuant to Local Magistrate Rule 4(b), the parties have ten (10) days from service of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Adalberto Jordan, United States District Judge. Failure to file timely objections shall bar the parties from attacking on appeal the factual findings contained herein. Loconte v. Dugger, 847 F.2d 745 (11th Cir. 1988), cert denied, 488 U.S. 958 (1988); R.T.C. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND ORDERED** in Chambers at Miami, Florida this 13 day of July 2009.

WILLIAM C. TURNOFF
**UNITED STATES MAGISTRATE JUDGE**

cc: Honorable Adalberto Jordan
    Counsel of record